IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANINE CONNORS,                                    3:12-cv-01309-MA

                    Plaintiff,              OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

TIM D. WILBORN
P.O. BOX 370578
Las Vegas, Nevada 89137

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

L. JAMALA EDWARDS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Janine Connors, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). See 42 U.S.C. §§ 401-434. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on November 15, 2004, alleging disability beginning December 1, 2002 caused by left shoulder injuries and learning disabilities. Tr. 65. The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on December 14, 2006, at which plaintiff testified, but was not represented by counsel. In addition, vocational expert (VE) Nancy Bloom was present throughout the hearing and testified. Tr. 340-56.

On January 12, 2007, the ALJ issued a decision denying plaintiff's application. Tr. 14-23. The Appeals Council declined review, and plaintiff timely appealed. Tr. 5-8. On March 24, 2009, this court reversed the final decision of the Commissioner and remanded for further consideration. Tr. 396-98.

On remand, an ALJ conducted another hearing on April 5, 2011, at which plaintiff testified and was represented by counsel.   Tr. 659-701.   In addition, VE Gary Jesky was present throughout the hearing and testified.    On April 20, 2011, the ALJ issued a decision again denying plaintiff's application for benefits.    The Appeals Council again declined review, and plaintiff timely commenced the instant action.   Tr. 357-60.

### FACTUAL BACKGROUND

Born on November 2, 1968, plaintiff was 34 years old on the alleged onset date of disability and 42 years old on the date of the remand hearing.   Plaintiff has a high school diploma, but reported participating in special education throughout her schooling.  Tr. 73.  Plaintiff has past relevant work as a Freight Handler, Security Guard, Asphalt Truck Driver, Maid, Field Researcher/Surveyor, Cashier, and Gas Station Attendant.  Tr. 393.

In addition to her testimony at both hearings, plaintiff submitted an Adult Function Report.    Tr. 100-05.    Plaintiff's husband, Wayne Connors, submitted a Third Party Function Report. Tr. 88-96.   Carol Greenough, Ph.D., performed a Comprehensive Psychological Evaluation and submitted an opinion.   Tr. 158-63. Paul A. Switlyk, M.D., additionally ascribed some functional limitations regarding plaintiff's left shoulder in the course of a "Closing Shoulder Exam."   Tr. 180-81.

///

3 - OPINION AND ORDER

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff did not engage in substantial gainful activity between the alleged onset date, December 1, 2002, and her date last insured, March 31, 2008. See 20 C.F.R. §§ 404.1571 et seq.; Tr. 388.

At Step Two, the ALJ determined that plaintiff's rheumatoid arthritis; degenerative disease of the left, non-dominant shoulder; and cognitive disorder (not otherwise specified) were severe impairments. See 20 C.F.R. § 404.1520(c); Tr. 388-89. In addition, the ALJ found plaintiff's depression, right shoulder pain, cardiomegaly, and obesity were nonsevere impairments, but nonetheless considered the combined effect of the severe and nonsevere impairments in addressing plaintiff's residual functional capacity. Tr. 388-89.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.   See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; Tr. 389-90.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, except that plaintiff is further limited to lifting ten pounds occasionally and less than ten pounds frequently with the non-dominant left arm; lifting 20 pounds occasionally and ten pounds frequently with the dominant right arm; no climbing ladders, scaffolds, or ropes; occasional crawling; unlimited reaching with the right arm, but only occasional reaching with the left arm in all directions; standing and walking a total of four hours in an eight-hour day; and performing simple, routine, unskilled work.   Tr. 390-93.

At Step Four, the ALJ found that plaintiff is capable of performing past relevant work as a Cashier, albeit with the number of cashier jobs available reduced by 75% to accommodate plaintiff's functional limitations.   See 20 C.F.R. § 404.1565; Tr. 393-94.

In the alternative, at Step Five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Small Products Assembler.   See 20 C.F.R. §§ 404.1569, 404.1569(a); Tr. 394-95.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises five issues on appeal. First, plaintiff argues that the ALJ erred at Step Three in finding that plaintiff's rheumatoid arthritis did not meet or equal a listed impairment. Second, plaintiff asserts that the ALJ improperly rejected her testimony. Third, plaintiff maintains that the ALJ improperly rejected the opinions of Drs. Czarnecki, Switlyk, and Greenough. Fourth, plaintiff argues that the ALJ improperly rejected the lay testimony of Wayne Connors, plaintiff's husband. Finally, plaintiff submits that the jobs cited by the ALJ at Steps Four and Five are inconsistent with the RFC.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at

6 - OPINION AND ORDER

1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.  **Step Three Finding**

Plaintiff argues that the ALJ failed to properly address whether plaintiff's rheumatoid arthritis met or equaled Listing 14.09.  In making a finding of whether a claimant's condition meets or medically equals a listed impairment, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).  "Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion," it does not require the ALJ to do so under any particular heading in the opinion. Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001).

Here, the ALJ found "[n]or did claimant's symptoms of rheumatoid arthritis meet or equal any listing described in section 14.00 (Immune System)." Tr. 389.  Later in the opinion, the ALJ extensively discussed the medical evidence concerning plaintiff's rheumatoid arthritis, noting that it generally appeared well controlled by medication, that some of her pain symptoms were unrelated to rheumatoid arthritis, and plaintiff frequently appeared to be largely asymptomatic. Tr. 392.  The ALJ's findings

in this respect are supported by substantial evidence, as plaintiff's medical records indicate that her treatment providers generally found that her rheumatoid arthritis was stable, without significant physical findings, mild, and well controlled by medication. See, e.g., Tr. 476, 516-19, 525, 541, 543, 546, 549, 551, 553, 566-67, 600, 606, 608, 610. This discussion is sufficient to "evaluate the evidence that supports [the ALJ's] conclusion" that plaintiff's rheumatoid arthritis "did not meet or equal any listing described in section 14.00." See Tr. 389; Lewis, 236 F.3d at 513. The ALJ's Step Three finding was not in error.

## II. **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595,

599 (9th Cir. 1999).    In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).    The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At her December, 2006 hearing, plaintiff testified that a left shoulder injury forced her to have surgery, but that she still could not tolerate her arm hanging from her side or any jarring to her shoulder. Tr. 345, 351. Accordingly, plaintiff testified that she had to prop her arm up frequently. Id. In addition to her shoulder impairments, plaintiff testified that she has difficulty reading and writing, and was in special education throughout her schooling. Tr. 349-50.

At the April, 2011 hearing, plaintiff testified that she cannot drive for long periods of time because the jarring hurts her shoulder. Tr. 666. Plaintiff testified that her shoulder pain became much worse after her surgery, and that she could no longer lift her left arm above her head. Tr. 673. Plaintiff stated that as of March 31, 2008, the last date insured, she had arthritis in her shoulder that caused her pain in cold weather. Tr. 674. Plaintiff stated that the rheumatoid arthritis affects her

shoulder, ankles, feet, and hands, and that her hands are particularly painful after activity. Tr. 675-76. In addition, plaintiff reported that her feet and ankles would hurt the day after she "stood too much, or walked around, or did anything." Tr. 677. Plaintiff testified that she could only stand or walk for 30 minutes to one hour before needing to rest, and that she could not lift more than a load of dry laundry because of her shoulder problems. Tr. 681. Plaintiff reported that she was able to do household chores such as cooking, loading and unloading the dishwasher, vacuuming, and laundry, but not all at the same time. Tr. 689-90. Generally, however, plaintiff testified that as of the date last insured she lived a very sedentary lifestyle. Tr. 687.

In her Adult Function Report dated November 21, 2004, plaintiff reported that in a typical day she gets dressed and "sit[s] here at home," unless she has an appointment to attend. Tr. 100. Plaintiff reported that her arm pain interferes with her sleep, and makes certain aspects of dressing and bathing difficult. Tr. 101. Plaintiff stated that she could no longer cook because of the pain in her shoulder, and that her husband does most of the household chores. Tr. 102. Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, kneel, and climb stairs. Tr. 103. Plaintiff stated that she can only walk for two blocks before needing to rest "a long time." Tr. 103. Plaintiff's reading deficits, she reported, cause her

difficulty following written instructions, but she has no problem following spoken instructions.  Tr. 103.

The ALJ discredited plaintiff's testimony because the extent of symptoms alleged were inconsistent with activities reported in her testimony and elsewhere in the record, and because it was inconsistent with the conditions and limitations contained in the medical record.  Tr. 391.  I conclude that these reasons amount to clear and convincing reasons to reject plaintiff's testimony.

The absence of disabling diagnoses of permanent conditions in the medical record is a particularly strong reason to reject plaintiff's testimony.  Indeed, as to plaintiff's shoulder injury, the medical record reveals consistently normal or mild findings, plaintiff's significant subjective complaints notwithstanding.  E.g., Tr. 143-50, 152, 157, 174.

On April 28, 2004, plaintiff underwent shoulder surgery performed by Dr. Switlyk which revealed some shoulder pathology.  Tr. 170-71.  Five weeks post operation, plaintiff reported "doing okay," though "still quite sore and painful."  Tr. 185.  At that point, she was released to light duty with no lifting or reaching away from her body with the left arm.  Tr. 185.  In July of 2004, Dr. Switlyk, however, kept her "off even light duty work, as I do not think it would be reasonable or tolerated for her to drive four hours a day for her job."  Tr. 184.  After three more months of little improvement, Dr. Switlyk opined that plaintiff had

"plateaued with rehabilitative efforts," and diagnosed her with "mild permanent partial impairment on the basis of restricted active range of motion," and "mild restriction on the basis of weakness." Tr. 181. Additionally, Dr. Switlyk opined:

> I do not think she could return to her work as a warehouse person. I think she would be restricted with this left shoulder to a sedentary category of lifting and carrying and additional restriction from pushing or pulling, repetitive reaching away from her body or overhead use with her left arm.

Id. Most notably, however, after plaintiff's treatment relationship with Dr. Switlyk ended in October of 2004, there were only passing references to left shoulder problems scattered throughout a very extensive medical record. Tr. 314 (7/1/06), 549 (3/9/07), 557 (5/12/06), 558 (5/15/06), 566 (8/14/09). The ALJ reasonably concluded that the medical record was inconsistent with plaintiff's allegations of ongoing, severe left shoulder limitations.

The ALJ's reasoning in this respect also applies to plaintiff's arthritis allegations. As discussed above, although the record indicates occasional flares of arthritic pain, generally the medical record reflects that plaintiff's arthritis symptoms were well managed. The ALJ reasonably discredited plaintiff's testimony because it was not supported by the medical record.

The ALJ also reasonably cited inconsistency between plaintiff's alleged symptoms and activities of daily living as a

reason to discredit plaintiff's testimony. For example, on September 1, 2005, plaintiff reported that her exercise habits included swimming. Tr. 489. Swimming is clearly inconsistent with plaintiff's allegations of severe, ongoing shoulder limitations. On August 19, 2004, plaintiff cancelled a physical therapy appointment for August 31 because she was "going on vacation with her son," despite reporting extensive limitations and a very sedentary lifestyle in her Adult Function Report in November of that year. Tr. 100, 271. Finally, as the ALJ noted, plaintiff's June 26, 2003 report that she investigates fires and goes to meetings for the volunteer fire department, even if she no longer fights fires, is also inconsistent with her allegations of significant limitations. Tr. 160. In sum, the above reasons, taken together, constitute clear and convincing reasons to reject plaintiff's testimony of disabling limitations.

## III. **Medical Testimony**

The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

To be "opinions," the records must be "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [that claimant] can still do despite the impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). If a record does not meet the criteria of 20 C.F.R. § 404.1527(a)(2), it is not an "opinion," but rather only one portion of the medical evidence from which the ALJ's decision must find the support of substantial evidence.

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

///

14 - OPINION AND ORDER

**A.    Dr. Czarnecki**

Plaintiff first argues that the ALJ failed to give any reasons to reject the "opinions" of Mark D. Czarnecki, D.O.    Plaintiff cites two chart notes from Dr. Czarnecki that indicate that plaintiff was to temporarily remain off work during treatment of her left shoulder injury.    See Tr. 198, 207.    These records, however, are not "opinions" because they do not meet the criteria of 20 C.F.R. § 404.1527(a)(2).    Rather, these records are chart notes that merely reflect the notes of Dr. Czarnecki's ongoing treatment of plaintiff.    While these records are certainly part of the medical record upon which the ALJ's decision must be based, they are not entitled to the special consideration of opinion evidence.    I find that the ALJ's discussion of Dr. Czarnecki's records was sufficient, and the information contained in Dr. Czarnecki's chart notes does not deprive the ALJ's decision of the support of substantial evidence.    See Tr. 391-92.    Thus, the ALJ did not err in his consideration of Dr. Czarnecki's records.

**B.    Dr. Switlyk**

Plaintiff next argues that the ALJ failed to fully incorporate Dr. Switlyk's opined limitations into the RFC despite giving Dr. Switlyk's opinion "significant weight."    As relevant here, Dr. Switlyk opined "I think she would be restricted with this left shoulder to a sedentary category of lifting and carrying and additional restriction from pushing or pulling, repetitive reaching

away from her body or overhead use with her left arm." Tr. 181. In the RFC, the ALJ limited plaintiff to light work, except that plaintiff was further limited with respect to her left arm to lifting ten pounds occasionally and less than ten pounds frequently and occasional reaching in all directions.  Tr. 390.

Plaintiff argues that the ALJ erred in failing to incorporate two of Dr. Switlyk's limitations into the RFC - the reaching and sedentary lifting limitations.  This argument is without merit. The ALJ reasonably translated Dr. Switlyk's opinion as to repetitive reaching overhead or away from her body with the left arm into an occasional reaching in all directions limitation in the RFC.[1]  Moreover, Dr. Switlyk only limited plaintiff to a sedentary category of lifting *with the left shoulder*, a limitation that was appropriately accounted for by the ALJ's limitation of plaintiff to occasional ten pound lifting and frequent less-than-ten pound lifting with the left arm.  The ALJ reasonably translated Dr. Switlyk's opined reaching and lifting limitations into the RFC. See Stubbs-Danielson, 539 F.3d at 1174.

///

///

───────────────

[1] Notably, Dr. Switlyk did not opine plaintiff could not reach overhead or away from her body at all, but rather that she would have "additional restriction from . . . *repetitive* reaching." Tr. 181 (emphasis added).  The ALJ's limitation to occasional reaching was a reasonable interpretation of this opinion.

C.   **Dr. Greenough**

Plaintiff next argues that the ALJ rejected Dr. Greenough's opinion that plaintiff required workplace accommodations for her reading and writing deficits without providing sufficient reasons. Dr. Greenough performed a Comprehensive Psychological Evaluation for the purpose of assisting plaintiff with vocational rehabilitation.   Tr. 158.   In a section entitled "Planning Suggestions," Dr. Greenough noted that plaintiff's "reading disability and writing disability are on the edge of being significant."   Tr. 161.   Dr. Greenough opined that plaintiff "is going to do best in hands-on work.   While she can use some very brief and non-formal reading and writing, it will be important she not be in a job that relies on this much."   Id.   With respect to challenges plaintiff faces in looking for a job, Dr. Greenough noted that "[a]ny accommodations that can be made to help her, including having a reader and a scribe would open doors for her *to get through tests that she needs to get a job*."   Tr. 162 (emphasis added).   On the whole, however, Dr. Greenough found that plaintiff "would be a very good candidate for moving into some kind of new hands-on, non-physically demanding work.   She would learn best probably from on-the-job training.   I saw her being a potentially good worker."   Id.

The ALJ apparently interpreted Dr. Greenough's opinion as being "consistent with the residual functional capacity for

performing unskilled work with no restriction on social contact,"
and accordingly gave it "some weight."  The ALJ did not note any
portion of Dr. Greenough's opinion that he rejected, however, and
did not provide any reasons for doing so.  Thus, for the ALJ's
treatment of Dr. Greenough's opinion to have been proper, it must
be accommodated by the limitation of plaintiff to "simple, routine,
unskilled work."  Tr. 390.  I conclude it was.

Because the opinion was written for Vocational Rehabilitation
purposes, some of Dr. Greenough's discussion pertained to helping
plaintiff *find* a job, and did not entirely concern whether
plaintiff was capable of performing work.  The disability analysis,
however, is confined to the latter inquiry.  42 U.S.C. §
423(d)(2)(A).  Thus, to the extent Dr. Greenough was discussing
plaintiff's ability to be hired at a job, that portion of the
opinion was irrelevant to the disability analysis.

The paragraph in which Dr. Greenough discussed accommodations
for plaintiff addressed plaintiff's ability to be hired, not
whether she was capable of performing work.  Dr. Greenough opined:

> It sounds as if [plaintiff] frequently *cannot get jobs
> that would be appropriate for her* because of her
> difficulties with reading and writing.  Any
> accommodations that can be made to help her, including
> having a reader and a scribe[,] would open doors for her
> *to get through tests that she needs to get a job.*

Tr. 162 (emphasis added).  Thus, Dr. Greenough's discussion of
accommodations was not relevant to the disability analysis, and it

was accordingly not error for the ALJ to omit any discussion of accommodations from his decision. I conclude that the remainder of Dr. Greenough's opinion was adequately captured by the limitation to simple, routine, unskilled work. This is especially true considering there is no evidence the cognitive deficits described by Dr. Greenough had worsened since the time plaintiff maintained a number of similarly unskilled jobs. The RFC was consistent with the relevant portion of Dr. Greenough's opinion. In sum, the ALJ appropriately weighed the medical testimony and incorporated the limitations contained therein into the RFC.

IV. **Lay Testimony**

Plaintiff next asserts that the ALJ cited insufficient reasons to reject the testimony of plaintiff's husband, Wayne Connors. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

Mr. Connors's allegations largely mirrored plaintiff's. Mr. Connors reported that in a typical day, plaintiff "sits at home and watches TV, and goes to [appointments] when she has them." Tr. 88. Like plaintiff, Mr. Connors reported that he does most of the household chores, and that she has trouble with getting dressed, caring for her hair, and shaving her armpits. Tr. 89-90. Much

like plaintiff, Mr. Connors alleged plaintiff's conditions affected her ability to lift, squat, bend, stand, reach, walk, and climb stairs.  Tr. 93.

Also like plaintiff, the ALJ rejected Mr. Connors's testimony because it was inconsistent with the medical record.  As discussed above, the medical record is inconsistent with Mr. Connors's allegations of severe limitations, as plaintiff's longstanding shoulder impairments were described as mild before losing prominence in the medical record altogether, and plaintiff's rheumatoid arthritis, while causing occasional flares, was well controlled.  This inconsistency is a germane reason to reject Mr. Connors's testimony.   The ALJ appropriately weighed the lay testimony.

## V.    **Step Four and Five Findings**

Plaintiff finally argues that the ALJ erred at Steps Four and Five because the jobs cited are inconsistent with the RFC, and because the ALJ failed to properly credit plaintiff's and Mr. Connors's testimony, as well as the opinions of Drs. Czarnecki, Switlyk, and Greenough.  The ALJ, however, reasonably relied on the VE testimony in making the Step Four and Five findings.  The VE specifically testified that the Cashier job was available, but plaintiff's other past relevant work was not because "the other jobs . . . would likely involve more bilateral arm use." Tr. 694.  Moreover, the VE specifically reduced the number of Cashier jobs

available to plaintiff on account of her functional limitations. Tr. 695. Similarly, with respect to the small product assembly job relied upon in the ALJ's alternative Step Five finding, the VE specifically testified that "I think, as long as [the nondominant] extremity can be used as a, as a helping hand, so to speak, and the dominant hand . . . is still functional, then that has a significant impact on my answer." Tr. 697. The ALJ reasonably relied on this detailed testimony in making the Step Four and Five findings. Finally, based on my above findings, I reject plaintiff's argument that the vocational hypothetical was inadequate.

<u>**CONCLUSION**</u>

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this __12__ day of November, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge